# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CHRISTOPHER L. GALE, )
)
      Claimant, )  No. 1:16-CV-04614
)
      v. )  Jeffrey T. Gilbert
)  Magistrate Judge
NANCY A. BERRYHILL,[1] Acting )
Commissioner of Social Security, )
)
      Respondent. )

## MEMORANDUM OPINION AND ORDER

Claimant Christopher L. Gale ("Claimant") seeks review of the final decisions of Respondent Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"), denying Claimant's application for disability insurance under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 9.]

Pursuant to Federal Rule of Civil Procedure 56, both Claimant and Respondent moved for summary judgment. [ECF Nos. 18, 22.] For the reasons stated below, Claimant's Motion for Summary Judgment is granted and Respondent's Motion for Summary Judgment is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] On January 23, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25, Colvin is automatically substituted as the Defendant in this case. No further action is necessary to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Claimant filed an application for disability insurance benefits and supplemental security income on February 13, 2013, alleging a disability onset date of January 15, 2013. (R. 12.) After an initial denial and a denial on reconsideration, Claimant filed a request for an administrative hearing. (R. 110–11.) Claimant, represented by counsel, appeared and testified before an Administrative Law Judge ("the ALJ") on August 18, 2014. (R. 29–76.) A Vocational Expert ("the VE") also testified. (R. 59–66.)

On November 24, 2014, the ALJ issued a written decision denying Claimant's application for benefits based on a finding that, from his alleged onset date through the date of his hearing, he was not disabled under the Social Security Act. (R. 9–28.) The opinion followed the five-step sequential evaluation process required by Social Security Regulations. 20 C.F.R. § 404.1520. As an initial matter, the ALJ noted Claimant met the insured status requirements of the Social Security Act through September 30, 2015. (R. 14.) At step one, the ALJ found Claimant had not engaged in substantial gainful activity since October 1, 2012. (*Id.*) At step two, the ALJ found Claimant had the severe impairments of uncontrolled hypertension, renal failure, and obesity. (*Id.*) At step three, the ALJ found Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926) ("the Listings") (R. 15.)

Before step four, the ALJ determined Claimant's residual functional capacity ("RFC") changed during the alleged period of disability and crafted two RFC determinations. The first RFC covered the time from October 1, 2012 through June 30, 2013. Under that RFC, Claimant had the RFC to perform light work as long as the work did not involve concentrated exposure to

temperature extremes or extreme humidity, dangerous machinery, or heights. (R. 15.) The second RFC related to Claimant's ability to work on and after July 1, 2013. Under that RFC, Claimant could only perform sedentary work and could not stand or walk for more than two hours in an eight-hour working day. (R. 19.) The ALJ further limited Claimant to never using ladders, ropes, or scaffolds and infrequently using climbing ramps or stairs, balancing, stopping, kneeling, crouching, or crawling. (*Id.*) Finally, the ALJ found Claimant could not work around dangerous moving machinery or unprotected heights, or engage in commercial driving. (R. 19–20.) Based on this RFC determination and the testimony of the VE, the ALJ concluded at step four that Claimant was capable of performing his past relevant work as a garment sorter, as performed by Claimant and in the national economy. (R. 20.) Because of this determination, the ALJ found Claimant was not disabled under the Social Security Act. (R. 22.) The Social Security Appeals Council subsequently denied Claimant's request for review, and the ALJ's decision became the final decision of the Commissioner. (R. 1–7.) *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Claimant now seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–107 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *Nelms*, 553 F.3d at 1097.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence to support the findings. *Nelms*, 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

### III. DISCUSSION

Claimant asserts the ALJ made two errors. First, Claimant argues the ALJ erred in his assessment of Claimant's credibility. Second, Claimant argues the ALJ erred by rejecting the opinion of the treating physician and relying on the expert physician's opinion.

4

**A.** **The ALJ Did Not Properly Support His Assessment of the Treating Physician's Opinion with Substantial Evidence.**

Controlling weight is given to a claimant's treating physician if it is both "well supported by medical findings *and* not inconsistent with other substantial evidence in the record." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (2003) (citing 20 C.F.R. § 404.1527(c)(2)) (emphasis added). Treating physicians typically benefit from greater familiarity with the claimant's claimed disability and symptoms. *Id.* If an ALJ rejects a treating physician's opinion, he must explain his reasons for doing so. 20 C.F.R. § 404.1527(f)(2); *see also Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005) (quoting *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001)) ("The ALJ is required to 'articulate, at some minimum level, [his] analysis of the evidence.'")). Identifying specific inconsistencies between the evidence as a whole and the treating physician's opinion may help to support an ALJ's reason for the weight given to a physician's opinion. *See Eakin v. Astrue*, 432 Fed. App'x. 607, 612 (7th Cir. 2011) ("An ALJ who declines to give controlling weight to the opinion of a treating physician must offer good reasons that are sufficiently specific in explaining what weight, if any, she assigned it.") (internal quotes omitted). A contradictory opinion of a non-treating physician or medical expert is not sufficient, on its own, to reject a treating physician's opinion. *Gudgel*, 345 F.3d at 470.

Dr. Boonyapredee, Claimant's treating physician, treated him on at least five different occasions. On August 22, 2013, Dr. Boonyapredee treated Claimant for uncontrolled hypertension and chronic kidney disease. (R. 793.) He treated Claimant again on February 27, 2014 for the same conditions, as well as for chronic headaches. (R. 803–07.) He noted some improvement in Claimant's control of the conditions, but that his blood pressure was "still elevated." (R. 806.) Claimant again visited Dr. Boonyapredee on April 10, June 9, and July 17,

2014, regarding his hypertension, kidney disease, and headaches, all resulting in similar reports of continued symptoms and adjustments to medication in response. (R. 808–21.)

On September 18, 2014, Dr. Boonyapredee completed a residual functional capacity questionnaire regarding Claimant's conditions. (R. 858–63.) Dr. Boonyapredee found Claimant required limits on the amount of weight he could carry and suffered from fatigue caused by his chronic kidney disease and uncontrolled hypertension. (*Id.*) He also noted Claimant suffered from atrial fibrillation, hypertensive cardiomyopathy, headaches, and lower extremity edema. (R. 858.) As a result of these conditions, Dr. Boonyapredee found Claimant could not walk one city block without pain or rest, needed rest for one hour during every eight hour work day, and only could stand or walk for one hour in an eight hour work day. (*Id.*) Dr. Boonyapredee said he based his opinion on his treatment and progress notes, laboratory reports, and other tests. (R. 863.)

The ALJ gave "little weight" to Dr. Boonyapredee's opinion, but failed to explain in any detail why he did so.[2] (R. 19.) Instead, the ALJ stated generally that Dr. Boonyapredee's opinion was "inconsistent with the evidence as a whole." *Id.* The ALJ also said Dr. Boonyapredee's opinion was inconsistent with his own treatment notes and with the testimony of Dr. Stevens, a non-examining expert physician. *Id.* The ALJ gave "substantial weight" to the opinion of Dr. Stevens, which was much less limiting than Dr. Boonyapredee's opinion. *Id.*

The ALJ's lack of explanation for the weight given to each physician's opinion is problematic. In discounting the opinion of Claimant's treating physician, the ALJ said Dr. Boonyapredee's opinion was inconsistent with his own treatment notes and with Dr. Stevens' testimony. Dr. Boonyapredee said in his opinion that his diagnoses were based on laboratory

---

[2] The ALJ noted that he disagreed with Dr. Boonyapredee's assessment that Claimant cannot carry less than five pounds or work on a sustained basis. The ALJ provided no explanation for this conclusion.

findings. (R. 863.) Throughout Dr. Boonyapredee's treatment notes, he consistently noted Claimant suffered from high blood pressure and fatigue, which he repeatedly diagnosed as a result of uncontrolled hypertension and chronic kidney disease. (R. 804, 806, 809, 814, 816.) These notes are not clearly inconsistent with Dr. Boonyapredee's opinion dated September 18, 2014. (R. 860–63.) Yet, the ALJ did not explain what specific inconsistencies he saw between Dr. Boonyapredee's treatment notes and his opinion dated September 18, 2014.

Without explanation for the finding that Dr. Boonyapredee's opinion contradicted his own treatment notes, it is unclear if the ALJ lacked understanding of Dr. Boonyapredee's opinion. *See Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014) (noting if an ALJ is unable to "discern the basis for a treating physician's determination," then he must contact the physician for additional information). If the ALJ had concerns or questions regarding the treating physician's opinions, he had a duty to contact the physician to clarify. SSR 96-5 *6 (S.S.A.), 1996 WL 374183 (". . . the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion."). The ALJ instead gave substantial weight to the non-examining, expert physician's opinion and all but rejected Dr. Boonyapredee's opinion. (R. 19).

The ALJ also did not explain how Dr. Boonyapredee's opinion is inconsistent with the evidence as a whole. As explained above, if the treating physician's opinion is inconsistent with other substantial evidence in the record, the ALJ may give less weight to the opinion. *Gudgel*, 345 F.3d at 470 (citing 20 C.F.R. § 404.1527(c)(2)). The ALJ said Dr. Boonyapredee's opinion was inconsistent with Dr. Stevens' testimony about Claimant's condition, but provided no explanation or reasoning as to the source of the conflict. (R. 19.) He said Dr. Stevens' opinions "are consistent with the record as a whole," but provided no explanation of why his opinions

were any more consistent with the record than Dr. Boonyapredee's. While the ALJ noted Dr. Stevens had the opportunity to review the entire record and was familiar with Claimant's entire medical history, he did not explain how Dr. Stevens' opinion was inconsistent with Dr. Boonyapredee's opinion. (R. 19.) Without this connection and given that Dr. Boonyapredee's opinion is supported by medical evidence in the record, the Court is unable to see how Dr. Boonyapredee's opinion is inconsistent with the evidence as a whole. This leaves only the hospital records as the remaining substantial evidence that possibly could be inconsistent with Dr. Boonyapredee's opinion. This evidence is never cited as such by the ALJ, however.

The Court cannot accept an unsupported assertion concerning the weight given to a physician's opinion. *See Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) (noting it was problematic the ALJ did not provide an explanation for preferring one physician's opinion over another). An ALJ cannot simply "substitute his own judgment for a physician's opinion" without providing a logical bridge to the rest of the evidence in the record. *Boiles*, 395 F.3d at 425. In this case, the ALJ did not build a logical bridge between the evidence and his conclusion that Dr. Boonyapredee's opinion was inconsistent with his own treatment notes and the expert physician's opinion. In light of the ALJ's conclusory assertions unsupported by cites to the record, the Court cannot discern whether that happened in this case.

The Commissioner repeatedly complains others have not explained why the ALJ's finding was incorrect. She says Claimant has "not show[n] that Dr. Boonyapredee's opinion was well-supported . . . or that it was well-explained." [ECF No. 23], at 3. She complains Claimant has not proven "that Dr. Boonyapredee's opinion about [Claimant's] ability to work was correct. *Id.* And she even attacks Dr. Boonyapredee for not "explain[ing] why [certain] impairments would cause" the limitations he opined they would. As the above authority makes clear, it is the

8

job of the ALJ to make sure he understands the medical opinions in the record and to explain why he gave each opinion the weight he did. It is not the Court's job to do that on review of the ALJ's decision.

Moreover, the Commissioner failed to identify substantial evidence in the record that supports the ALJ's decision. The ALJ made vague references to inconsistencies, but the two broad inconsistencies he identified are not enough alone to justify the decision. The Commissioner repeats the ALJ's conclusory assertions and cites Dr. Stevens' testimony, but she does not cite medical records or any other evidence that contradicts Dr. Boonyapredee's opinion. She also does not identify any inconsistencies between Dr. Boonyapredee's opinion and his treatment notes. We are left only with conclusory, unexplained, vague statements of supposed inconsistencies identified by the ALJ. The ALJ's use of the word "including" indicates there may be more inconsistencies not identified. The Court cannot, however, speculate what other inconsistencies might exist.

The only substantive argument made by the Commissioner that merits further discussion is her contention that Dr. Boonyapredee's opinion is inconsistent with the ALJ's finding that Plaintiff's hypertension was controllable with medication. [ECF No. 23], at 4. The ALJ did not discuss this rationale. Dr. Boonyapredee, however, treated Claimant for a long time. During this time, he likely became very familiar with Claimant's treatment regimen. And with that information, Dr. Boonyapredee still rendered his opinion regarding Claimant's condition. The ALJ would have had to explain in more detail why the opinion of a doctor who knew so much about Claimant should be cast aside so easily.

With "little weight" given to Dr. Boonyapredee's opinion, the ALJ is left with only the opinion of the expert physician, Dr. Stevens. An ALJ cannot rely solely on a non-treating

physician's opinion simply because it contradicts the treating physician's opinion. *Gudgel*, 345 F.3d at 470. The ALJ thus erred by discounting Dr. Boonyapredee's opinion without providing a meaningful explanation as to why he did so. This case must therefore be remanded for further explanation of the weight given to each physician's opinion. That is not to say the ALJ must give controlling weight to Dr. Boonyapredee's opinion on remand. But, without an explanation for rejecting it, the ALJ has not sufficiently shown reason for the minimal weight given to the treating physician's opinion.

**B.      On Remand, The ALJ Should Reconsider His Assessment of Claimant's Credibility.**

The Court will only overturn an ALJ's credibility determination if it is "patently wrong." *Shideler v. Astrue*, 688 F.3d 306, 310–11 (7th Cir. 2012). Still, an ALJ must provide specific reasons for his credibility finding, and he must support those reasons with evidence and explanation sufficient to allow a reviewing body to understand his reasoning. *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). Moreover, in making a credibility determination, an ALJ is required to "build an accurate and logical bridge between the evidence and the result." *Shramrek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).

Since the ALJ issued his decision in this case, the Social Security Administration ("the SSA") issued new guidance on how the agency assesses the effects of a claimant's alleged symptoms. Social Security Ruling ("SSR") 96-7p and its focus on "credibility" has been superseded by SSR 16-3p. 2016 WL 1119029, at *1. The new SSR directs ALJs to focus on the "intensity and persistence of [the claimant's] symptoms" rather than on "credibility." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) ("The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain assertions by applicants, especially as such assertions often

cannot be either credited or rejected on the basis of medical evidence.") Because SSR 16-3p is simply a clarification of the SSA's interpretation of existing law, rather than a change to it, this new ruling applies to Claimant's argument in this case. *See Quails v. Colvin*, 2016 WL 1392320, at *6 (N.D. Ill. Apr. 8, 2016); *Hagberg v. Colvin*, 2016 WL 1660493, at *6 (N.D. Ill. Apr. 27, 2016). The new SSR still requires ALJs to consider familiar factors in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms such as testimony, objective medical treatment, medication and its side effects, daily activities, etc. *See* SSR 16-3p *4–7 (S.S.A.), 2016 WL 1119029.

In his opinion, the ALJ said he discounted Claimant's testimony because: Claimant repeatedly did not take medication as directed, Claimant left the hospital against medical advice twice, and Claimant refused to seek medical treatment when advised to do so once. (R. 19.) The Court is concerned the ALJ mischaracterized the records he relied upon to support these conclusions and failed to adequately consider Claimant's side of the story. If there is evidence of non-compliance with prescribed treatment, an ALJ must inquire into a claimant's reasons for this non-compliance. *See* SSR 82-59 *2 (S.S.A.), 1982 WL 31384 ("[A]ppropriate development must be made to resolve whether the claimant or beneficiary is justifiably failing to undergo the treatment prescribed."). The ALJ, however, did not specifically inquire into each of the Claimant's reasons for non-compliance with all prescribed treatment. (R. 34.) Without such inquiry into each reason for non-compliance, this Court has no way to know if Claimant had "good reason" for non-compliance with his prescribed treatment. *See Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (noting an adverse credibility claim may only be found when "claimant does not have good reason for the failure or infrequency of treatment.").

The ALJ cites evidence of multiple instances of Claimant's non-compliance with prescribed medication. (R. 16, 17, 19.) During the hearing, the ALJ asked Claimant why he stopped taking his medication. (R. 34.) Claimant responded he could not afford the medication. (*Id.*) Inability to afford treatment may be considered a good reason for non-compliance. *See Craft*, 539 F.3d at 679 (inability to afford treatment may "provide insight into the individual's credibility."). Yet, the ALJ did not specifically inquire any further into Claimant's reasoning. Instead, he tied Claimant's non-compliance with medication to his credibility without sufficient explanation for doing so. (R. 19.) Perhaps the ALJ did not believe that Claimant could not afford the medication. Claimant did indicate he sought public aid to purchase the medications at an unknown point during his treatment. (R. 34.) Even if the ALJ did think Claimant could afford the medication, he should have specifically inquired into Claimant's financial situation to better assess his reasons for stopping the medication.

In addition to medication non-compliance, the ALJ cited two incidents of Claimant leaving the hospital against medical advice. (R. 19.) First, the ALJ said that on March 2, 2012, Claimant left an emergency room ("ER") against medical advice due to an "argument with hospital employees." (R. 16.) The record, however, shows Claimant left the ER because of an argument *between* hospital employees. (R. 274.) Moreover, Claimant immediately sought treatment elsewhere, suggesting we cannot necessarily construe his leaving the ER under these circumstances to support a lack of credibility. (R. 283.) If the ALJ was confused regarding the incident and Claimant's reasons for leaving the hospital, he should have inquired about the incident at the hearing, but he failed to do so.

On November 7, 2013, Claimant was again treated at an ER for chest pain, but refused admission to the hospital. (R. 18.) The record shows Claimant received some treatment at the

ER before his refusal of admission. (R. 553.) The examining physician then consulted with Dr. Boonyapredee, who offered to follow-up with Claimant. (*Id.*) The record indicates the examining physician gave Claimant medication as directed by Dr. Boonyapredee and told Claimant to return to the ER if he experienced any severe chest pain. (*Id.*) Given this consultation with Claimant's primary treating physician and the recommended treatment plan, it is unclear from the record if Claimant's refusal of admission was actually even against medical advice. The record again suggests Claimant may have been unable to afford treatment after he missed a previously scheduled appointment with Dr. Boonyapredee that day because of an outstanding balance. (*Id.*) As before, the ALJ failed to inquire further to determine if inability to afford treatment was the reason for Claimant's conduct.

Finally, the ALJ pointed to Claimant's refusal to go to the ER on June 10, 2013, after an examining physician found he was experiencing high blood pressure. (R. 17, 535.) The record shows Claimant told the physician his condition is chronic and his blood pressure is always high when he goes to the doctor, so he chose not go to the ER. (R. 535.) The ALJ's determination fails to consider Claimant's familiarity with the treatment of his chronic condition as his stated reason for refusing a hospital visit. While the ALJ may or may not find this to be a good reason for refusing treatment, any explanation for non-compliance with prescribed treatment is owed consideration.

Perhaps rather than drawing an adverse credibility inference, the ALJ intended his discussion of Claimant's medication non-compliance to show Claimant's disability could be controlled with medication. For an ALJ to find a claimant is disabled by his condition only because the claimant failed to follow prescribed treatment, he must find "the evidence establishes that the individual's impairment precludes engaging in any substantial gainful activity (SGA) . . .

; the impairment has lasted or is expected to last for 12 continuous months from onset of the disability or is expected to result in death; treatment which is clearly expected to restore capacity to engage in any SGA . . . has been prescribed by a treating source; and the evidence of the record discloses that there has been refusal to follow prescribed treatment." SSR 82-59 *1 (S.S.A.), 1982 WL 31384. The SSR requires a finding of all four elements to qualify as substantial evidence that a claimant's impairment was the result of refusal of treatment for his condition. *Id.*

To the extent that disability due to treatment non-compliance is what the ALJ intended to show, he failed to properly explain his conclusion. While the ALJ noted evidence showing Claimant refused to follow prescribed treatment (R. 16.), he failed to provide evidence of the first three required findings laid out in SSR 82-59. *1 (S.S.A.), 1982 WL 31384. Although there may be evidence of these additional elements in the record, the ALJ's reasoning did not draw this essential connection. The Court does not make a finding on credibility here, but the ALJ should take another look at this issue on remand in light of the full record.

## IV. CONCLUSION

For the reasons stated above, Claimant's Motion for Summary Judgment is granted [ECF No. 18] and Respondent's Motion for Summary Judgment [ECF No. 22] is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: March 7, 2017